788 P.2d 201

**Marie B. HOOPES, surviving spouse of Earl Hoopes; Marie B. Hoopes, Personal Representative of the estate of Earl Hoopes; Roger H. Hoopes, a surviving adult child of Earl Hoopes; Elizabeth Hoopes Poulsen, a surviving adult child of Earl Hoopes; and Gloria Hoopes, a surviving adult child of Earl Hoopes, Plaintiffs–Appellants,**

*v.*

**DEERE & COMPANY, a Delaware corporation; John Deere Company, a Delaware corporation; and Farmers Equipment, Inc., an Idaho corporation, Defendants–Respondents.**

No. 17895.

Supreme Court of Idaho.

Feb. 28, 1990.

Webb, Burton, Carlson, Pedersen & Webb, Twin Falls, for plaintiffs-appellants. Lloyd J. Webb and Curtis R. Webb, argued.

Holden, Kidwell, Hahn & Crapo, Idaho Falls, for defendant-respondent Deere & Co. & John Deere Co. William D. Faler, argued.

Wood, Stephens & Telford, Idaho Falls, for defendant-respondent Farmers Equipment, Inc. Stephen H. Telford, argued.

McDEVITT, Justice.

This appeal arises out of a wrongful death action brought by the appellants against Deere & Company (Deere), John Deere Company (John Deere), and Farmers Equipment, Inc. (Farmers), the respective manufacturers and retailer of the John Deere 8820 combine that caused Earl Hoopes's death. The trial court granted Deere and John Deere's motion for summary judgment on the grounds that Hoopeses' action was barred by the statute of limitations. The court granted Farmers' motion for summary judgment on the grounds that, as retailers under I.C. § 6–1407, they were exempt from potential product liability as a matter of law under the Idaho Product Liability Reform Act. Hoopes appeals.

In September of 1982, Earl Hoopes purchased a John Deere 8820 combine from Farmers Equipment Co. The combine was designed and manufactured by Deere, marketed and distributed by John Deere, and sold by Farmers. On August 31, 1985, Earl Hoopes was tragically killed when his combine rolled backwards and crushed him while he was refueling it.

On August 22, 1987, Earl Hoopes's adult son, Roger, spoke to the president of Farmers, LaVar Grover. He told Grover about his father's death and that the Hoopes family was going to file suit against Farmers and John Deere.

The Hoopeses filed their original complaint on August 27, 1987. The complaint named John Deere Industrial Equipment Company (Industrial) and Farmers as the defendants. The Hoopeses alleged that the John Deere 8820 combine was defective and unreasonably dangerous. They also alleged that it was negligently designed because its hydrostatic transmission does not have a locking device, and is thus capable of holding the combine in a stationary position for only a short time when the engine is off and the transmission is in neutral. The statute of limitations for filing the complaint expired on August 31, 1987, four days after the complaint against Industrial and Farmers was filed.

Industrial was served with the complaint through its statutory agent, E.L. Miller, on October 20, 1987. Mr. Miller was also John

388

Deere's registered agent in Idaho.[1] Mr. Miller forwarded the Hoopeses' complaint and summons to Deere & Company's legal department on October 21, 1987. Farmers was served with the Hoopeses' summons and complaint on March 4, 1988. On April 18, 1988, the Hoopeses amended their original complaint by removing Industrial as defendant and adding Deere and John Deere. Service of the amended complaint/summons was accepted by Deere and John Deere on April 28, 1988.

Prior to trial, Deere and John Deere moved for summary judgment on the ground that the amended complaint was not timely. They argued that since it was not filed until after the statute of limitations had run, it could not relate back to the date of the original filing. The court granted the motion. Farmers also moved for summary judgment on the ground that since they were the retailers of the combine they were exempt from potential product liability as a matter of law under the Idaho Product Liability Reform Act. The trial court granted Farmers' motion. The Hoopeses appeal from these summary judgments.

## I.

### TIMELINESS OF THE COMPLAINT

■ Applying I.R.C.P. 15(c) and the U.S. Supreme Court majority opinion in *Schiavone v. Fortune*, 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986), the district court ruled that the Hoopeses' amended complaint could not relate back because: (1) The complaint was not amended to name Deere and John Deere before the statute of limitations ran; and (2) prior to the time the statute of limitations ran, neither Deere or John Deere knew or had reason to know that, but for a mistake in naming Industrial, the action would have been brought against them.

The Hoopeses argue that the complaint filed against Deere and John Deere was timely because I.R.C.P. 15(c) permits plaintiffs to relate their amended complaints

back to the date of original filing where the original filing was timely.

Rule 15(c) reads as follows:

**Relation back of amendments.**—Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. *Any amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits,* and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him. The relation back of an amendment joining or substituting a real party in interest shall be as provided in Rule 17(a). The delivery or mailing of process to the Idaho attorney general or his designee, or an agency or officer who would have been a proper defendant if named, satisfies the requirement of clauses (1) and (2) hereof with respect to the state of Idaho or any agency or officer thereof to be brought into the action as a defendant. (Emphasis added.)

Broken into the portions relevant to this appeal, I.R.C.P. 15(c) states that any amendment changing, the party against whom a claim is asserted, relates back if:

1. The claim or defense in the new pleading arose out of the same conduct ...; and

2. Within the statutory period for *"commencing the action ..."* the party to be brought in by amendment
   a. has received such notice of the *institution* of the action that he will

1. John Deere Industrial Equipment Company and John Deere Company are both subsidiaries of Deere & Company.

not be prejudiced in maintaining his defense on the merits, and

b. knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

There is no doubt that Hoopes et al.'s claim against Deere and John Deere arose out of the same conduct as the original complaint. The question is whether Deere and John Deere received notice of the institution of the action within the statutory period for "commencing the action." This, in turn, raises the question of what is meant by "the statutory period for commencing the action." Does it mean the time for filing the complaint; as trial court ruled and as Deere and John Deere claim? Or does it mean the time within which process must be served; as the Hoopeses claim.[2]

To answer this question we turn to the U.S. Supreme Court opinion in *Schiavone v. Fortune*, 477, U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986). In Schiavone, the United States Supreme Court was faced with a question nearly identical to the one before this Court. *Schiavone* initially filed a complaint against *Fortune Magazine* which is published by Time, Inc. Then, after the applicable statute of limitations ran, Schiavone amended the complaint and named Time as the defendant. The Court determined that inasmuch as Time, Inc.'s first notice that suit had been instituted against it occurred after the expiration of the applicable statute of limitations, Time did not receive notice "within the period provided by law for commencing the action against it," as required under Rule 15(c). The Court stated:

> Under Rule 15(c), the emphasis is upon "the period provided by law for commencing the action against" the defendant. An action is commenced by the filing of a complaint, and, so far as *Time* is concerned, no complaint against it was filed prior to May 19, 1983 [the expira-

tion of the applicable statute of limitations].

The *Schiavone* court specifically declined to "temper the plain meaning of the language (of Rule 15(c)), by engrafting upon it an extension of the limitations equal to the asserted reasonable time ... for the service of a timely filed complaint." 106 S.Ct. at 2385. *Schiavone* is controlling.

In *Chacon v. Sperry Corp.*, 111 Idaho 270, 723 P.2d 814 (1986), the Idaho Supreme Court noted that Idaho has adopted the Federal Rules of Civil Procedure. The court stated:

> [P]art of the reason for adopting the Federal Rules of Civil Procedure in Idaho, and interpreting our own rules adopted from the federal courts as uniformly as possible with the federal cases, was to establish a uniform practice and procedure in both the federal and state courts in the State of Idaho.

*Chacon* at 275, 723 P.2d 814.

*Chacon* held that:

> Our examination of case law directs us to conclude that the federal courts, both before and after our adoption of amended Rule 15(c), have held that an amended complaint designating the true names of fictitiously named defendants will not relate back and toll the statute of limitations *unless* the notice requirements of amended Rule 15(c) are satisfied.

Consequently, *Schiavone* and *Chacon* show that, under amended Rule 15(c), the newly named party must receive notice of the commencement of the action before the statute of limitations runs. This applies where the defendant's name is corrected as well as where the defendant's identity is not initially known.

In view of the foregoing authorities, an inquiry into the time allowed for service of process is irrelevant to this appeal. The relevant question is whether, prior to the time the statute of limitations ran, Deere, and John Deere received such notice of the *institution* of the action that they would not have been prejudiced in maintaining a

---

**2.** The Idaho Rules of Civil Procedure permit service of process within a reasonable time after the action is filed. Service of process can be validly made after the statute of limitations has run. *Crawford v. Pacific Car & Foundry Co.*, 112 Idaho 820, 736 P.2d 872 (1987).

defense on the merits; and, whether they "[k]new or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against them."

Here, the first possible notice that Deere or John Deere had was on October 20, 1987. This was when Industrial was served with the complaint through its statutory agent, E.L. Miller, John Deere's registered agent in Idaho. This was fifty days after the statute of limitations expired and was not sufficient to satisfy the I.R.C.P. 15(c) requirement for notice.[3]

The Hoopeses next argue that notice to John Deere Insurance Co., a wholly owned subsidiary, should be imputed to Deere and John Deere. They claim that this notice was received when LaVar Grover, called John Deere Insurance Co. regarding the Hoopeses' plan to file suit, and that since this notice was received prior to the statute of limitations deadline, it was timely.

Contrary to the Hoopeses' assertion, notice of "the institution of the action" pertains to an action that has already commenced, not one that the parties intend to file. Accordingly, Roger Hoopes's disclosure to LaVar Grover that Hoopes intended to file suit, is inadequate under I.R.C.P. 15(c). The same is true for whatever Grover told John Deere Insurance Company. The only knowledge that could be imputed to Deere, and John Deere is that the Hoopeses' *intended* to file suit.

## II.

### RETAILER LIABILITY

■ The Hoopeses argue that despite being retailers, Farmers Equipment, Inc., had sufficient knowledge of the alleged design defect of the John Deere 8820 combine to be held strictly liable, and that the trial court, therefore, erred in granting Farmer's motion for summary judgment.

I.C. § 6–1407(1) provides that "product sellers other than manufacturers shall not be held subject to liability in circumstances where they do not have a reasonable opportunity to inspect the product in a manner which would or should, in the exercise of reasonable care, reveal the existence of the defective condition which is in issue...."

It is undisputed that Farmers is a product seller other than a manufacturer within the meaning of I.C. § 6–1407(1) and had nothing to do with the design or manufacture of the 8820 combine. Farmers was merely the product's seller. Therefore, Farmers may be liable under the Act only if one of the following events occurred: 1) Farmers made express warranties concerning the design of the combine's braking system that were inconsistent with those made by Deere and John Deere; 2) Farmers had a reasonable opportunity to inspect the braking system and should have discovered alleged defect; 3) Farmers had reason to know of the alleged defect; 4) Farmers altered, modified, or installed the system causing the injury.

The Hoopeses have not alleged that Farmers either made express warranties or altered, modified, or installed the braking system. Therefore, the only issues are whether Farmers knew, or should have known, of the alleged defect.

In making this determination, we rely on the facts set forth in the affidavit of LaVar Grover because, as the trial court correctly stated: "The facts set forth in the affidavit of LaVar Grover are not disputed or opposed in any way by the plaintiffs. Therefore, the court relies upon these undisputed facts in ruling on Farmers' motion for summary judgment. See I.R.C.P. Rule 56(e)."

At the time the combine was delivered, Farmers performed a visual inspection to insure that the combine, and all of its necessary component parts, had been deliv-

---

3. We note that our ruling creates the potential for anomalous results to the extent that defendants named in complaints amended after the statute of limitations has run must have some kind of notice or reason to know that an action *has been* instituted against them before the statute runs, whereas defendants named in complaints filed before the statute runs need only receive notice (service of process) within a reasonable time after the complaint is filed. But this anomaly is overcome by the policy goal of uniformity with the federal courts and the policy of encouraging diligence and time lines among plaintiffs.

ered, and had not suffered any damage in shipment. As LaVar Grover explained in his affidavit:

> Farmers ... does not have the expertise or technical or engineering personnel to perform an inspection of any John Deere 8820 combine which would reveal the presence or possible existence of a design defect in the braking system; rather, Farmers ... relies exclusively upon the technical and safety expertise of John Deere and Deere for the design and manufacture of all John Deere farm equipment which it sells; therefore, even if the absence of a park lock mechanism in the transmission of the combine constituted a defect in said combine neither I nor any of the officers, agents or employees of Farmers had the technical training or expertise to discover such a defect.

Based on these facts, the trial court correctly ruled that:

> Farmers; inspection of the combine in question could not reveal the existence of a defective condition in the combine in question from the lack of a park lock mechanism because the undisputed evidence before the court establishes that the said combine had an adequate park brake system which would effectively control the movement of the combine if properly activated.

The Hoopeses suggests that since LaVar Grover was aware that the combine did not have a park lock mechanism, Farmers had the requisite knowledge of the alleged defect. This assertion is based on LaVar Grover's deposition. However, further examination of that testimony indicates that LaVar Grover was completely unaware of any possible design defects in the braking systems of the John Deere 8820 combines. Therefore, as a "product seller other than a manufacturer" Farmers is immune from the Hoopeses' product liability suit.

Under Idaho law a plaintiff who brings a cause of action based on warranty, negligence, or strict products liability, has the burden of proving a defect. *See Henderson v. Cominco Am., Inc.*, 95 Idaho 690, 696, 518 P.2d 873 (1973); *McBride v. Ford Motor Co.*, 105 Idaho 753, 762, 673 P.2d 55 (1984). As noted by the trial court, the combine was equipped with park brakes which were properly adjusted and fully operational at the time it was delivered; and the park brakes effectively prevented the combine from moving forward or backward when activated. These park brakes eliminate any potential design defect claimed by the Hoopeses. Accordingly, even if Farmers were not immune under the Product Liability Reform Act, they are still entitled to summary judgment since the Hoopeses completely failed to address the significance of the park brakes.

Decision of the district court is affirmed. Motion for attorney fees denied. Costs to respondents.

BAKES, C.J., and JOHNSON, BOYLE, JJ., concur.

BISTLINE, Justice, concurring specially:

While I reluctantly concur in the result reached by the majority, I am not at all convinced that we should adhere so faithfully to federal precedent when it works such a harsh result. In other situations in which our rule has been virtually identical to the federal rule, we have declined to follow the federal cases interpreting the rule if that precedent did not seem appropriate in the Idaho context. Especially considering the criticism which has been leveled at the *Schiavone* case,[4] this is perhaps an area in which we should re-examine our adherence to the federal precedent.

---

4. *See, e.g.,* Bauer, *Schiavone: An Un–Fortunate Illustration of the Supreme Court's Role as Interpreter of the Federal Rules of Civil Procedure,* 63 N.D.L.Rev. (1988); Brussack, *Outrageous Fortune: The Case for Amending Rule 15(c) Again,* 61 S.Cal.L.Rev. 671 (1988); Note, *Looking Forward: A Fairer Application of the Relation Back Provisions of Federal Rule of Civil Procedure 15(c),* 63 N.Y.U.L.Rev. 131 (1988).